UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **TANYA CASON,** *Plaintiff,* v. **FACTORTRUST, INC.,** *Defendant.* | Case Number:   6:25-cv-470 **JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, **Tanya Cason** ("**Ms. Cason**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **FactorTrust, Inc.** ("**FactorTrust**"), stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages arising from violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction arises under the FCRA, § 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. FactorTrust is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

Page **1** of **18**

4. Venue is proper in the Middle District of Florida because the acts complained of were committed and / or caused by the Defendant in Orange County Florida, which is in the Middle District.

## PARTIES

5. Ms. Cason is a natural person residing in the City of Orlando, Orange County, Florida.

6. Ms. Cason is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. FactorTrust is a Delaware limited liability company with a principal business address of Post Office Box 3653, Alpharetta, GA, 30023.

8. FactorTrust's Delaware registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

9. FactorTrust is a *Consumer Reporting Agency* ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

10. In or around August 9, 2012, FactorTrust began maintaining a credit file on Ms. Cason.

11. At some point thereafter, United Auto Credit ("United") furnished information about a car loan Ms. Cason obtained in the amount of $12,297 to FactorTrust.

12. On information and belief, by August 2014, Ms. Cason's loan was 30 or more days past due.

13. Ms. Cason's loan was never again brought current.

14. The car securing Ms. Cason's loan was repossessed in or around 2015, with a purported $7,727 balance on the loan charged off by United in 2015.

15. As the United loan went 30-days past due in August 2014 and was never again brought current, the "date of first delinquency" ("DOFD") was August 2014.

16. The commencement of this delinquency in August 2014 was the event which preceded the charge-off of the loan.

17. United periodically furnished data to FactorTrust about Ms. Cason's loan.

18. FactorTrust was therefore made aware the loan was delinquent in August or September 2014, when the loan first became 30 days past due.

19. The FCRA, § 1681c(a)(4), limits the reporting period for delinquent information, such as a charged-off auto loan, to seven years, which period begins "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action."

20. FactorTrust therefore should have ceased reporting Ms. Cason's loan as of March 2022, at the latest.

21. United last furnished information to FactorTrust regarding Ms. Cason's loan on September 30, 2020.

22. United reported the loan with a status of "charge-off."

23. As of the filing of this Complaint, FactorTrust continues to include Ms. Cason's loan in consumer reports sold regarding Ms. Cason.

24. On information and belief, United also furnished information regarding Ms. Cason's loan to Equifax, Experian and Trans Union.

25. As with FactorTrust, United last updated its data to Experian on September 30, 2020.

26. The FCRA requires any entity that furnishes information about a delinquent account to provide the CRA, within 90 days of delinquency, the date of first delinquency on the account. *See* § 1681s-2(a)(5)(A).

27. Consistent with this requirement, on information and belief, United reported a DOFD of August 2014 for Ms. Cason's loan to each of Equifax, Experian, Trans Union and FactorTrust.

28. Between May 2021 and July 2021, within the seven-year reporting period, Equifax, Experian, and Trans Union each purged the United tradeline as obsolete.

29. FactorTrust was the lone outlier and did not purge the tradeline *at all*.

30. FactorTrust offers numerous products to its end-users, varying from bank account verification to its "LendProtect Risk Score."

31. While these products frequently do not include tradeline data in a format similar to its parent company, Trans Union, FactorTrust incorporates loan data into a number of its products, including its Risk Score, which it markets as follows:

> A complex analytical model using various data sources and derived data elements including **Loan Performance**, Public Record Data, Bank/Payment Data, and IDV and Fraud Data. The data elements are aggregated to create a predictive risk score enabling lenders to decision at a level that best reflects their underwriting policies. (Emphasis in bold).

32. Records from FactorTrust show it sold at least five reports concerning Ms. Cason in the last 24 months.[1]

33. On information and belief, these five reports included the out-of-date United loan in some format, be it factored into a risk score, or presented as a traditional tradeline.[2]

34. Unlike its parent company, Trans Union, FactorTrust employs almost no procedures to ensure maximum possible accuracy of reports sold, and lacks procedures to purge stale, obsolete data that is past the reporting period.

35. FactorTrust, a subsidiary of Trans Union, has policies and procedures starkly in contrast to those of its parent company.

---

[1] Plaintiff believes additional reports were sold within the past five years. Discovery will identify and such reports, as FactorTrust tracks inquiries, but only discloses the past two years to the consumer.

[2] While FactorTrust discloses credit inquiries to a consumer, it does not provide any means of discerning which product or which data was sold to any given end user, nor are the actual reports sold provided to the consumer. Discovery into the content of these reports will be required.

36. FactorTrust and Trans Union share financial resources.

37. FactorTrust and Trans Union share employees.

38. FactorTrust and Trans Union share data.

39. FactorTrust and Trans Union share legal counsel.

40. FactorTrust is effectively controlled by Trans Union.

41. Trans Union received identical data from United as FactorTrust.

42. Despite this, Trans Union deleted the United tradeline prior to August 2021.

43. Trans Union enforces Metro 2 reporting guidelines, which are set forth in the *Credit Reporting Resource Guide*, a resource which covers nearly every conceivable credit-reporting situation and question which might arise.

44. Notably, Metro 2 guidelines require data furnishers to report a DOFD immediately upon the reporting of any late payment history.

45. By contrast, FactorTrust requires no such compliance with Metro 2 guidelines.

46. FactorTrust routinely and regularly obtains credit reports from its parent company, Trans Union.

47. FactorTrust was therefore also placed on notice of the DOFD from Trans Union.

48. The FCRA is clear in its requirement that FactorTrust, as a CRA, is required to prepare accurate reports:

> Accuracy of Report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. *15 U.S.C. §1681e(b).*

49. FactorTrust was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Cason.

50. FactorTrust's credit reports containing the adverse United tradeline, claiming balances from 2015 are still past-due and owing, have negatively impacted Ms. Cason's credit score and ability to obtain new credit.

51. Curiously, Ms. Cason's FactorTrust consumer disclosure indicates the United tradeline has a "dispute date" of June 5, 2017.

52. Ms. Cason did not dispute any information whatsoever to FactorTrust in or around June 2017 and only became aware of its existence in March 2025.

## Duplicate Lendgreen Tradelines

53. FactorTrust also included two different tradelines concerning an online payday loan purportedly issued by Niiwin LLC d/b/a Lendgreen ("Lendgreen") in its consumer reports on Ms. Cason.

54. Lendgreen is an online lender making short-term, small-dollar payday loans at interest rates typically exceeding 700% annually.

55. As of March 14, 2025, FactorTrust was reporting two loans for $2,907, each with balances of $993 owed, with both loans opened on August 3, 2017.

56. Lendgreen, like almost all other online payday lenders, did not allow consumers to have two active loans at the same time.

57. Lendgreen did not report to FactorTrust that Ms. Cason had "two" loans.

58. Due to internal flaws in FactorTrust's software and systems, a single tradeline was duplicated into two, with one showing under Company ID 3329, "Lendgreen," and one under Company ID 4415, "NIIWIN LLC d/b/a Lendgreen."

59. Such tradeline duplication is hardly unique to Ms. Cason and has been documented by numerous other consumers. See, e.g., *Alex Archer vs. FactorTrust, Inc.*, case number 8:24-cv-193-JLB-AAS, M.D. Fla, January 22, 2024 (single tradeline reported by Crest Financial Services three times), *Ericia Apolinar vs. FactorTrust, Inc.*, case number 8:21-cv-02611-TPB-JSS, M.D. Fla, November 6, 2021 (single online payday loan from Target Financial reported twice with virtually-identical information), *Jamie Dawson vs. FactorTrust, Inc.*, Polk County, Florida, Feb. 18, 2021 (single loan from Acima reported twice with virtually-identical information).

60. The Lendgreen loan was, on information and belief, for no more than $700 and at an interest rate which exceeded 700% annually.

61. Unsurprisingly, Ms. Cason soon defaulted on loan payments due to the astronomically-high interest rate assessed; on information and belief, this occurred in August 2017.

62. Thus, FactorTrust should have purged *any* information associated with the Lendgreen loan by February 2025, at the latest.

63. Once again, due to the lack of DOFDs in tradeline data, FactorTrust's systems failed to purge the Lendgreen loans from Ms. Cason's file.

### Three-Year-Old Account Reported as "Too New to Rate"

64. Around February 4, 2022, the online lender CreditNinja (www.creditninja.com) reported Ms. Cason had a $1,575 loan outstanding.

65. CreditNinja is a product of CreditNinja Loan Servicing, which makes loans to consumers at interest rates at 180% annually and higher.

66. On May 26, 2022, CreditNinja reported to FactorTrust the balance was $1,485. *Id.*

67. CreditNinja reported the loan status was "too new to rate." *Id.*

68. Despite reporting the loan type as "PD" or "payday loan," e.g. a short-term loan, CreditNinja made no further reports after May 26, 2022.

69. FactorTrust continued to include the CreditNinja account in disclosures to Ms. Cason and in reports sold on Ms. Cason, without updating the balance or the status "too new to rate."

70. FactorTrust's information is not simply out of date but demonstrably false; by November 1, 2022 at the latest, Ms. Cason owed no money to CreditNinja.

71. The overwhelming majority of FactorTrust's data furnishers are short-term, small-dollar lenders; as such, allowing information to remain non-updated for three years or more virtually guarantees reports will be sold with stale, outdated, and erroneous information.

72. FactorTrust, a subsidiary of Trans Union, one of the largest CRAs in the world, operates in stark contrast to its parent company.

73. While Trans Union enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a *lingua franca* – FactorTrust requires no such compliance with Metro 2 guidelines and has no discernable quality-assurance standards.

74. Metro 2 guidelines require data furnishers to report the current balance of any non-$0 account at least once a month, to prevent stale, out-of-date information from appearing in consumer reports – the exact situation Ms. Cason experienced with the CreditNinja tradeline.

### FactorTrust Fails to Disclose All Information in Credit File

75. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Ms. Cason's request, FactorTrust was required to "clearly and accurately" disclose all information in Ms. Cason's file at the time of her request, as well as the sources of information relied upon.

76. Ms. Cason requested her consumer disclosure from FactorTrust on March 14, 2025.

77. The failure to include the date an adverse account will be deleted as obsolete inherently renders the disclosure incomplete, inaccurate, and unclear. See, e.g., *Gillespie v. Equifax*, 484 F.3d 938 (7th Cir. 2007).

78. FactorTrust's consumer disclosures **never** include DOFDs, purge dates, or other information which would reasonably inform a consumer when the account is going to be deleted from his/her file.

79. Thus, Ms. Cason, along with tens of thousands of other consumers who received their consumer disclosure from FactorTrust, have no way of knowing when (or even if) an account is going to be purged due to the running of the reporting period.

80. Likewise, Ms. Cason, and all other consumers who received their consumer disclosure from FactorTrust, do not know the reported DOFD of charged-off and collection accounts, and are thus provided no way to verify if the information is accurate.

81. As a result of FactorTrust's failures, Ms. Cason was deprived of information reasonably required to dispute inaccuracies on her report.

82. Ms. Cason's FactorTrust disclosure showed three adverse tradelines—the aforementioned United loan and the "two" Lendgreen loans.

83. None of the adverse tradelines contained any DOFD or other similar information which would indicate when the accounts will be (or, more accurately, *should have been*) purged as obsolete.

84. The Lendgreen duplicate tradelines contained no usable contact information; lendgreen.com is no longer a functioning website and simply displays a "domain name for sale" advertisement. The creditor's phone number listed in the tradeline is not answered.

85. The inclusion of even one adverse tradeline from a defunct predatory online lender which made loans at interest rates almost every State in the Union deems criminally usurious through a dubious rent-a-tribe scheme is unreasonable; the

inclusion of two tradelines for a single loan from the aforementioned lender borders on insanity.

86. The United, Lendgreen, and CreditNinja tradelines continue to report as of the date of this filing. Ms. Cason thus requests FactorTrust investigate and delete these tradelines from her credit file, for the reasons explained above.

87. FactorTrust's conduct has also caused Ms. Cason to suffer severe emotional distress, spend significant time and money forcing FactorTrust to comply with its statutory obligations, and finding and engaging counsel.

88. Ms. Cason has hired the aforementioned law firm to represent her in this matter and is obligated to pay its reasonable fees.

## COUNT I
## FACTORTRUST'S WILLFUL VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681c(a)(4)

89. Ms. Cason adopts and incorporates Paragraphs 1 – 88 as if fully restated herein.

90. FactorTrust violated **15 U.S.C. § 1681c(a)(4)** when it failed to remove the charged-off United tradeline and "two" Lendgreen tradelines after the running of the reporting period for each.

91. FactorTrust's conduct was willful and intentional, or, alternatively, was done with reckless disregard for its duties under the FCRA to purge adverse credit information.

92. Accordingly, FactorTrust is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Cason's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Cason prays for relief as follows:

a. An award of the greater of statutory damages of $1,000 per violation and Ms. Cason's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## FACTORTRUST'S NEGLIGENT VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681c(a)(4)

93. Ms. Cason adopts and incorporates Paragraphs 1 – 88 as if fully restated herein.

94. FactorTrust violated **15 U.S.C. § 1681c(a)(4)** when it failed to remove the charged-off United tradeline and "two" Lendgreen tradelines after the running of the reporting period for each.

95. FactorTrust's conduct was negligent. Accordingly, FactorTrust is liable, pursuant to 15 U.S.C. § 1681o, for actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Cason prays for relief as follows:

a. Actual damages pursuant to 15 U.S.C. § 1681o(a)(1).

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT III
## FACTORTRUST'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681e(b)

96. Ms. Cason adopts and incorporates Paragraphs 1 – 88 as if fully restated herein.

97. FactorTrust violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Cason, as it sold reports which included a United loan with a DOFD of 2014, two Lendgreen charge-offs with DOFDs of August 2017, and a CreditNinja tradeline last reported May 2022 as "too new to rate" with an inaccurate balance reporting.

98. FactorTrust has been sued before for including tradelines well past the end of the reporting period and is thus aware its procedures are flawed.

99. Moreover, the deletion of information after the running of the reporting period is one of the hallmarks of the FCRA and something FactorTrust should be keenly aware of at all times.

100. FactorTrust's conduct was willful and intentional, or, alternatively, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

101. Accordingly, FactorTrust is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Cason's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Cason prays for relief as follows:

a. An award of the greater of statutory damages of $1,000 per violation and Ms. Cason's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT IV
**FACTORTRUST'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681e(b)**

102. Ms. Cason adopts and incorporates Paragraphs 1 – 88 as if fully restated herein.

103. FactorTrust violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Cason, as it sold reports which included a United loan with a DOFD of 2014, two Lendgreen charge-offs with DOFDs of August 2017, and a CreditNinja

tradeline last reported May 2022 as "too new to rate" with an inaccurate balance reporting.

104. FactorTrust's conduct was negligent. Accordingly, FactorTrust is liable, pursuant to 15 U.S.C. § 1681o, for actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Cason prays for relief as follows:

a. Actual damages pursuant to 15 U.S.C. § 1681o(a)(1).

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT V
## FACTORTRUST'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681g(a)(1)

105. Ms. Cason adopts and incorporates Paragraphs 1 – 88 as if fully restated herein.

106. FactorTrust violated **15 U.S.C. § 1681g(a)(1)** when responding to Ms. Cason's request for her consumer disclosure when it failed to clearly and accurately disclose to Ms. Cason, a consumer, *all* of the information in his file at the time of the request. Specifically, FactorTrust disclosed three adverse tradelines without also disclosing their reported DOFD, or any other similar information which would indicate when the adverse information would be removed from Ms. Cason's credit file due to the running of the reporting period.

107. Trans Union, the parent entity which shares many employees with FactorTrust, includes such information it its disclosures to consumers.

108. FactorTrust's conduct was thus willful and intentional, or, alternatively, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

109. Accordingly, FactorTrust is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Cason's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Cason prays for relief as follows:

a. An award of the greater of statutory damages of $1,000 per violation and Ms. Cason's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT VI
## FACTORTRUST'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681g(a)(1)(A)

110. Ms. Cason adopts and incorporates Paragraphs 1 – 88 as if fully restated herein.

111. FactorTrust violated **15 U.S.C. § 1681g(a)(1)** when responding to Ms. Cason's request for her consumer disclosure when it failed to clearly and accurately disclose to Ms. Cason, a consumer, *all* of the information in his file at the time of the

request. Specifically, FactorTrust disclosed three adverse tradelines without also disclosing their reported DOFD, or any other similar information which would indicate when the adverse information would be removed from Ms. Cason's credit file due to the running of the reporting period.

112. FactorTrust's conduct was negligent. Accordingly, FactorTrust is liable, pursuant to 15 U.S.C. § 1681o, for actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Cason prays for relief as follows:

a. Actual damages pursuant to 15 U.S.C. § 1681o(a)(1).

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Cason hereby demands a jury trial on all issues so triable.

Respectfully submitted on March 18, 2025, by:

**SERAPH LEGAL, P. A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar Number: 119168
Lead Counsel for Plaintiff
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: (813) 321-2348
BGeiger@SeraphLegal.com
*Counsel for Plaintiff*